T.C. Memo. 1999-399

UNITED STATES TAX COURT

JOHN SHACKELFORD FAIRBANKS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14863-98.                    Filed December 8, 1999.

John Shackelford Fairbanks, pro se.

Thomas A. Vidano, for respondent.

MEMORANDUM OPINION

GOLDBERG, Special Trial Judge:  Respondent determined a
deficiency in petitioner's 1995 Federal income tax of $3,654 and
an accuracy-related penalty pursuant to section 6662(a) of $731.
Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year in issue, and all
Rule references are to the Tax Court Rules of Practice and
Procedure.

The issues for decision are: (1) Whether petitioner was engaged in the trade or business of consulting in 1995, and, if so, whether petitioner is entitled to claim Schedule C expenses relating to the consulting activity for the 1995 tax year; and (2) whether petitioner is liable for an accuracy-related penalty pursuant to section 6662(a).

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits submitted at trial are incorporated herein by this reference. At the time the petition was filed, petitioner resided in San Diego, California.

In 1991, petitioner began working as an engineer for Silicon Systems (Silicon) in Orange County, California, and he was laid off from Silicon in 1992. Thereafter, in the same year, petitioner established Fairbanks Laboratories (Fairbanks) as a sole proprietorship to provide state-of-the-art consulting services to the communications industry. In connection therewith, petitioner eventually installed several computers and communication lines in his home.

Petitioner's first consulting contract in 1992 was with Silicon, his former employer, in connection with the relocation of its manufacturing facility. Petitioner earned $17,431 in 1992 from his consulting activity and reported gross receipts of $17,431 and net profit of $5,630 on Schedule C attached to his 1992 Federal income tax return.

During 1993, petitioner obtained a subcontracting consultant job with TV Comm., Inc.  Although petitioner earned $5,400 as a consultant in 1993 and reported this amount as gross receipts on Schedule C, he also reported a net loss of $7,016 for 1993.  During 1993, petitioner attempted to find additional clients but was unsuccessful.

In 1993, petitioner was employed as a full-time engineer at Pacific Communication Sciences, Inc. (PCSI), working between 45 and 55 hours per week.

Petitioner enrolled in graduate engineering courses at the University of California-San Diego (UCSD), which were paid for by PCSI.  Petitioner attended a graduate course at UCSD in the fall of 1995 and attended an additional two or three courses in electrical engineering per semester in 1996.  Petitioner continued to work full time at PCSI until March 1996, when he was laid off.  Petitioner enrolled full time in UCSD's doctoral program in 1997.

Petitioner generated no income for his consulting activity for the 1994, 1995, and 1996 tax years.  Petitioner was unable to provide consulting services in either 1994 or 1995 because of the long hours he worked at PCSI.  Even though petitioner worked full time, he attempted to find clients that he could accommodate taking into account his busy work schedule.  He was unsuccessful.

Petitioner reported no gross receipts from consulting

activities in 1994, 1995, and 1996 on Schedules C, but reported $14,161, $16,389, and $12,533 of net Schedule C losses for the 1994, 1995, and 1996 tax years, respectively.  On his Schedule C attached to his 1995 Federal income tax return, petitioner reported no gross receipts and claimed the following expenses:

| | | |
|---|---:|---:|
| Advertising | $91.27 | |
| Car/truck expenses | 2,949.14 | |
| Depreciation/section 179 | 2,755.33 | |
| Supplies | 131.21 | |
| Travel expense | 229.17 | |
| Meals/entertainment | 190.62 | |
| Other expenses | 1,760.86 | $8,107.60 |
| Business use of home | | 8,281.35 |
| Total expenses | | 16,388.95 |

In 1997, petitioner obtained a consulting contract with L Three Communications, a local aerospace company, but was not paid until 1998.

In a notice of deficiency dated June 3, 1998, respondent determined that petitioner was not entitled to Schedule C expenses of $16,389 for the year in issue because he (1) was not engaged in an activity for profit pursuant to section 183, and (2) failed to substantiate his claimed 1995 Schedule C deductions.  Respondent also determined that petitioner was entitled to additional itemized deductions for real estate taxes and interest expenses in the amount of $3,361 for 1995.

As an initial matter, we deal with an issue raised by petitioner concerning respondent's conduct during audit and

administrative appeal.  As we understand it, petitioner contends that respondent acted in an unreasonable manner by failing to meet with him in a timely manner during the audit and administrative appeal process.  Petitioner cites Don Casey, Co. v. Commissioner, 87 T.C. 847 (1986), and asks this Court for relief.  The Don Casey, Co. case involved the award of costs and certain fees pursuant to section 7430, and it is apparently under this section that petitioner seeks relief.

A motion for litigation and administrative costs under section 7430 must be made pursuant to Rule 231.  Since the request for relief is premature and there is no motion pending at this time, we need not address this matter.

Section 183

Section 162 allows deductions for ordinary and necessary expenses paid or incurred in carrying on a trade or business. For a taxpayer to be engaged in a trade or business, the taxpayer's primary purpose for engaging in the activity must be for income or profit, and he must be involved in the activity with continuity and regularity.  See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  If an individual engages in an activity without the objective of profit, section 183 generally limits allowable deductions attributable to the activity to the extent of gross income generated by such activity.  See sec. 183(b).

Whether a taxpayer is engaged in the activity for profit depends on whether he undertook this activity with an actual and honest objective of making a profit. See Elliott v. Commissioner, 90 T.C. 960, 970 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990). Whether a taxpayer had an actual and honest profit objective is a question of fact to be resolved from all relevant facts and circumstances. See Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Greater weight is given to objective facts than to a taxpayer's statement of intent. See Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986).

Section 183(d) provides a rebuttable presumption that a taxpayer is engaged in an activity for profit if the gross income derived from the activity exceeds the deductions attributable to the activity for 3 or more of the taxable years in a 5-year period. Petitioner contends that he qualifies for such a presumption by arguing that Fairbanks is only the latest in a series of businesses started in 1986 by petitioner and his ex-spouse Deborah M. Fairbanks (Ms. Fairbanks) while they were married.

Beginning in 1986, Ms. Fairbanks apparently conducted various profitable business activities which were eventually consolidated under the name Integrative Learning Designs.

Petitioner contends that this Court should view Fairbanks as part of a continuing business enterprise begun in 1986 and therefore take into account tax years prior to 1992 when considering Fairbanks' history of profits and losses. Petitioner is attempting to attribute earlier Schedule C profits purportedly reported by Integrative Learning Designs to Fairbanks' consulting activity and thereby qualify for the section 183(d) presumption.

Petitioner has failed, however, to establish any connection between the business activities of Fairbanks and Integrative Learning Designs. Petitioner started Fairbanks in 1992, and its financial history, therefore, begins from that date. Since the gross income derived from petitioner's consulting activity does not exceed the deductions attributable to his activity for 3 or more of the taxable years in a 5-year period, petitioner does not qualify for a section 183(d) presumption.

Since petitioner does not qualify for a presumption that he engaged in his consulting activity for profit under section 183(d), we turn to section 1.183-2(b), Income Tax Regs., which provides the following nonexclusive list of factors which may be considered in determining whether an activity is engaged in with the requisite profit objective: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in

the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. No single factor is controlling, but rather it is an evaluation of all the facts and circumstances in the case, taken as a whole, which is determinative. See Weber v. Commissioner, 103 T.C. 378, 387 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995).

Petitioner alleges that he conducted his consulting activity in a businesslike manner, but this allegation is belied by the facts. We note that (1) petitioner did not keep contemporaneously written business or marketing plans, (2) petitioner did not keep income or expense projections for his consulting activity and failed to keep books and records detailing Fairbanks' financial information, and (3) petitioner failed to maintain a separate checking account or separate finances for his consulting activity during the year in issue.[1]

Additionally, though petitioner was aware that Fairbanks had generated no gross receipts for the 1994, 1995, and 1996 tax years, petitioner did not appreciably change his method of

---

[1] Petitioner started a commercial checking account for Fairbanks in 1996.

conducting the consulting activity. Petitioner did not alter his method of business or engage in new methods of finding prospective clients. Petitioner's only substantiated advertisement for the year in issue was an entry in the 1994-95 edition of the American Electronics Association directory. Petitioner conceded that he continued to buy new computer equipment every year despite Fairbanks' mounting losses and a dearth of clients.

Before 1992, the year petitioner started Fairbanks, petitioner had no experience as a computer consultant. Yet, despite this lack of expertise, petitioner failed to seek out expert business advice on how to conduct Fairbanks as a profitable activity. Petitioner contends that he continually strove to gain expertise in the computer consulting field by reading books, attending meetings, and speaking with venture capitalists. Petitioner's testimony on this point, however, is vague.

Petitioner also failed to establish that he expended significant time or effort in conducting the consulting activity during the year in issue. At trial, petitioner conceded that he was unable to provide consulting services in 1995 because of the long hours he worked at PCSI. In addition to the time spent working for PCSI, petitioner spent significant amounts of time at home with his children and attended engineering classes at UCSD.

Petitioner has also failed to establish that any of Fairbanks' assets will appreciate in value. Petitioner claims that Fairbanks' assets are its intellectual property and not its computer equipment. At trial, petitioner claimed to have invented four devices while conducting his consulting activity. Petitioner consented to discuss only one invention at trial, a remote-controlled pool heating unit. Petitioner explained that he would not discuss his other three inventions because he had not yet applied for patent protection.[2]

Petitioner estimated that his pool heating unit would earn him $1 milliion in profit once it was produced and marketed. Petitioner alleges that this invention alone sustains his contention that Fairbanks' intellectual property will appreciate in value.

Petitioner, however, has failed to establish any connection between his consulting activity and his inventions. Indeed, petitioner listed "consulting" as Fairbanks' principal business on his Schedule C for the 1992-97 tax years.

Even if we accept petitioner's claim that Fairbanks' assets are its intellectual property and we further accept that petitioner's inventions are somehow connected to his consulting activity, petitioner has still failed to establish that

---

[2] Petitioner applied for patent protection for the pool heating unit in February 1999, over 3 years after the year in issue.

Fairbanks' intellectual property will appreciate in value.

Petitioner conceded that he has never built a working prototype of the pool heating unit. Petitioner's forecast of million-dollar profits is therefore based upon mere speculation. Petitioner has also failed to produce any projected revenue stream studies or to substantiate the cost of producing even one remote-controlled pool heating unit.

Petitioner's financial status also indicates a lack of profit motive in his consulting activity. From the record, it is clear that the only year Fairbanks showed a net profit was 1992, the first year Fairbanks provided consulting services. Petitioner reported the following gross receipts and net losses from Fairbanks on Schedule C for the 1992-97 tax years:

|  | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 |
|---|---|---|---|---|---|---|
| Gross receipts | $17,431 | $5,400 | - | - | - | - |
| Profit/loss | 5,630 | (7,015) | ($14,161) | ($16,389) | ($12,532) | ($19,296) |

Petitioner also reported the following wage and capital gains income for the 1992-97 tax years:

|  | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 |
|---|---|---|---|---|---|---|
| Wages and capital gains | $13,816 | $37,453 | $69,464 | $80,046 | $49,617 | $51,401 |

The record clearly reflects that petitioner used large net losses from Fairbanks to offset wage and capital gains income. In the context of section 183 "profit" means an economic profit, independent of tax savings. See Surloff v. Commissioner, 81 T.C. 210, 233 (1983).

From 1992 to 1997, petitioner has reported net losses of only $69,313 while generating a net profit of $5,630. Such a history of successive and consistent losses does not support petitioner's contention that he was engaged in a trade or business for profit for the year in issue. "Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved." Sec. 1.183-2(b)(8), Income Tax Regs.

At trial, petitioner expressed great satisfaction in owning the sophisticated computer hardware and software which he had purchased between 1992 and 1997. Petitioner stated that he sometimes used the computers for personal reasons, such as to "interface" with his children.

Petitioner continued to buy new equipment every year even though Fairbanks was consistently generating large losses. These tax losses offset petitioner's wage and capital gains income, and, in effect, subsidized petitioner's yearly purchases of new and more sophisticated computer equipment.

In sum, we find that petitioner did not conduct his consulting activity in a businesslike manner or with continuity and regularity for the 1995 tax year. On the basis of the record, we find that petitioner did not engage in his consulting

activity for profit and was not engaged in the trade or business of consulting in 1995.  Respondent is sustained on this issue.

Schedule C Expenses

As stated above, a taxpayer must show that he engaged in an activity with the objective of making a profit in order to deduct expenses incurred under either section 162 or section 212.  See Golanty v. Commissioner, 72 T.C. 411, 425 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).  Where an activity is not engaged in for profit, section 183(b)(1) allows deductions that are not dependent on profit objectives, e.g., certain interest and State and local taxes.  Additional deductions are allowed under section 183(b)(2) as if the activity were engaged in for profit, but such deductions are allowed only to the extent that gross income from the activity exceeds deductions already allowed under section 183(b)(1).

As stated above, petitioner has failed to establish that he engaged in the consulting activity in 1995 with the objective of making a profit.  Additionally, petitioner failed to earn any gross income in the consulting activity for the year in issue. Since petitioner earned no consulting income in 1995, he is unable to deduct any Schedule C expenses pursuant to section 183(b), and we need not address the substantiation issue.

Section 6662(a)

The last issue for decision is whether petitioner is liable for a penalty pursuant to section 6662(a). Section 6662(a) imposes a penalty of 20 percent of the portion of the underpayment which is attributable to negligence or disregard of rules or regulations. See sec. 6662(b)(1). Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. See Neely v. Commissioner, 85 T.C. 934, 947 (1985). The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). No penalty shall be imposed if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the underpayment. See sec. 6664(c).

At trial, petitioner failed to establish that he acted in good faith with respect to his 1995 underpayment. Petitioner failed to comply with section 183 and disregarded rules and regulations by deducting excessive losses for the 1995 tax year. On the basis of the record, we hold that petitioner is liable for the accuracy-related penalty under section 6662(a).

To reflect the foregoing,

Decision will be entered for respondent.